Campbell, Chief Justice,
reviewing the facts found to be established, delivered the opinion of the court:
The plaintiff is an inspector of customs at the port of New York, which position he held on July 1, 1910, and for sometime prior to that date. On June 10, 1879, he was appointed a night inspector at $2.50 per diem. He became day inspector in September, 1883, at $4 per diem. He was detailed as a laborer at $2.50 per diem in September, 1902, and was appointed storekeeper at $1,400 per annum in July, 1903. In June, 1908, he was appointed day inspector of customs at $5 per diem. It thus appears that he has been in the customs service for a great many years in one capacity or another. Under a plan of reorganization and classification of the force at the port of New York adopted by the collector, with the approval of the Secretary of the Treasury, and from July 1, 1910, the plaintiff was continued as a day inspector at the compensation of $4 per diem, at which rate he has been paid.
Plaintiff filed his petition in this court on July 6,1914, and his amended petition was filed July 2, 1915. By the latter he claims “two dollars per diem from July 1, 1910, to and *465 including June 30, 1915.” In other words, he claims that, notwithstanding the action of the administrative officers fixing his compensation at $4 per diem from July 1, 1910, he is entitled to $6 per diem from that date, and, having received $4 per diem, that he should be awarded judgment for the difference. The plaintiff was one of several hundred inspectors at the port of New York.
After the act of March 4,1909, 35 Stats., 1065, and acting under its provisions, the collector at said port caused a reorganization and classification of the inspectors, whereby some were to be paid from and after July 1,1910, at the rate of $4 per diem, some at $5 per diem, and others at $6 per diem. With that purpose in view, the collector appointed a committee of competent persons, who were instructed to sit as an examining board and to call before it each inspector of customs and, taking into consideration his age, physical condition, length of service, efficiency, character, and qualifications to grade him according to his test and submit a report and recommendations based on this examination. The committee having complied with their instructions submitted a report, which was approved by the collector, with the result that the corps of inspectors of customs at the port of New York “ was divided into three classes, viz, class 2, with compensation at the rate of $4 per diem each; class 4, with compensation at the rate of $5 per diem each; class 5, with compensation at the rate of $6 per diem each.” The changes were duly approved by the Secretary of the Treasury, whose order recited: “Inspectors, class 4, at $5 per diem each, to be inspectors, class 5, new offices, with compensation at the rate of $6 per diem each, the positions thus vacated to be abolished ” (followed by the names), and “ Inspectors, class 4, at $5 per diem each, to be inspectors, class 2, new offices, with compensation at the rate of $4 per diem each, the positions thus vacated to be abolished ” (followed by the names, among which is that of plaintiff). Certain other changes were made, and the Secretary’s order recited that “ the above reorganization will result in adding 52 inspectors, class 5, at $6 per diem each; 52 inspectors, class 2, at $4 per diem each; and the abolition of the positions of 104 inspectors, class 4, *466 at $5 per diem each, all of which will result in no increase or decrease in the expenses of your district.”
The plaintiff duly executed his oath of office and when informed of the reduction of compensation from $5 to $4 per diem he protested against the same. He contends that the Secretary was not authorized to reduce his per diem from $5 to $4 and, further, as stated by his counsel, “that the power of the Secretary was to increase claimant’s pay to an amount not exceeding $6 and that when the Secretary did increase the pay of certain inspectors on July 1, 1910, by operation of law claimant’s salary was thereby increased.” We can not assent to either of these contentions. The acts, general and special, to which our attention has been directed in the presentation of the case may be grouped as follows:
The Kevised Statutes provide:
“ Sec. 2733. Each inspector shall receive, for every day he shall be actually employed in aid of the customs, three dollars; * * *.’’
“ Sec. 2737. The Secretary of the Treasury may increase the compensation of the inspectors of customs in such ports as he may think it advisable so to do, and may designate, by adding to the present compensation of such officers, a sum not exceeding one dollar per day.”
The act of March 3, 1881, 21 Stat., 429, provides:
“That hereafter the Secretary of the Treasury may appoint inspectors of customs at a compensation less than three dollars per day, when, in his judgment, the public service will permit.”
The act of December 16, 1902, 32 Stat., 753, provides:
“That the Secretary of the Treasury is hereby authorized to increase the compensation of inspectors of customs at the port of New York as he may think advisable and proper, by adding to their present compensation a sum not exceeding one dollar per day, which additional compensation shall be for work now performed by them at unusual hours, for which no compensation is now allowed, and shall include work performed by said inspectors at night in examining passengers’ baggage, and also as reimbursement for expenses incurred by them for meals and transportation while in the discharge or performance of their official duties.”
*467 The act of March 4, 1909, 35 Stat., 1065, entitled “ An act fixing the compensation of certain officials in the customs service and for other purposes,” provides:
“ That the Secretary of the Treasury be, and he is hereby, authorized to increase and fix the compensation of laborers in the customs service, as he may think advisable, to a rate not exceeding eight hundred and forty dollars per annum.”
“ Sec. 2. That the Secretary of the Treasury be, and he is hereby, authorized to increase and fix the compensation of inspectors of customs as he may think advisable, not to exceed in any case the rate of six dollars per diem, and in all cases where the maximum compensation is paid no allowance shall be made for meals or other expenses incurred by inspectors when required to work at unusual hours.”
“ Sec. 3. That the Secretary of the Treasury be, and he is hereby, authorized to increase and fix the compensation of deputy collectors, assistant appraisers and examiners of merchandise, examiners of tea, and examiners and special examiners of drugs, in the customs service, as he may think advisable, not to exceed in any case three thousand five hundred dollars per annum.”
“ Sec. 4. That the Secretary of the Treasury be, and he is hereby, authorized to increase and fix the compensation of deputy naval officers and deputy surveyors of customs, as he may think advisable, not to exceed in any case three thousand dollars per annum.”
“ Sec. 6. That the Secretary of the Treasury be, and he is hereby, authorized to increase and fix the compensation of assistant weighers in the_ customs service, as he may think advisable, not to exceed in any case a rate of four dollars per diem.”
“Sec. 8. That all laws and parts of laws inconsistent with this act are hereby repealed.”
We are also referred to a provision in the act of June 30, 1906, 34 Stats., 636, applicable to inspectors of customs at the port of New York, reading as follows:
“To pay the inspectors of customs of the port of New York the difference between the per diem salary of four dollars paid them during the months of October, November, and December, nineteen hundred and five, and their proper per diem salary for the same period (five dollars per diemi), in accordance with the act of Congress approved December sixteenth, nineteen hundred and two, thirty-one thousand dollars, or so much thereof as may be necessary.”
*468 The act of March 4,1907, 34 Stats., 1373, is similar to that of June 30, 1906, just quoted.
In connection with the foregoing the act of August 24, 1912, 37 Stats., 434, is important. By that act section 3687, Revised Statutes, providing a general appropriation for the expenses of the customs service, is repealed, and with the purpose of reducing the total cost of said service a reorganization of the service is directed. The President was authorized to reorganize the customs service, such reorganization to be communicated to Congress at its next regular session and “to constitute for the fiscal year 1914 and until otherwise provided by Congress the permanent organization of the customs service.” In pursuance of that authority the President effected' a plan of reorganization and reported the same to Congress March 3,1913. (See United States Compiled Statutes, 1913, sec. 5327.) Under that plan there were established 49 customs collection districts “in lieu of all customs collection districts, ports, and subports of entry” then existing, and the compensation of officers and employees was stated. It is noticeable that this plan follows the classification of customs inspectors at the port of New York adopted, as above stated, in 1910, by providing for inspectors at $4, at $5, and $6 per diem. As this plan was by the terms of the act to be effective for the fiscal year 1914, commencing July 1, 1913, it is manifest that the plaintiff’s claim, if any he has, must be confined to the period between July 1,1910, and July 1,1913.
It is conceded that where the statute creates an office and fixes the salary the officer discharging its duties is entitled to the salary fixed by the law. Glavey's case, 182 U. S., 595. The salary can not be reduced by Executive order without legal authority therefor. Andrews’ case, 240 U. S., 90. The question is whether the Secretary had authority under the act of 1909 to fix plaintiff’s per diem compensation at $4. When that act was passed the compensation of inspectors of customs was different at different ports. The law authorized a compensation of $3 per day, and by the act of 1881 the Secretary could employ inspectors at less than $3 per day. He had been given authority (sec. 2738, Revised Statutes) to increase the compensation of the inspectors at such ports as he might *469 designate, not exceeding $1 per day; and by the act of 1902 he was authorized to make another increase so far as the port of New York was concerned. It thus appears that inspectors of customs were being paid at various rates—$3 or less per day, $4 per day, and at New York they were receiving $5 per day. The act of 1909 deals with several classes of customs officials: Laborers, inspectors, deputy collectors, assistant appraisers and examiners, deputy surveyors, assistant weighers, etc., As to each of these it is provided that the Secretary of the Treasury could increase and fix their compensation not to exceed a stated maximum in any case. The act manifests a legislative purpose to provide a complete scheme whereby the compensation of customs employees could be regulated. As appropriations for the expense of collecting customs had long been made in a lump sum upon estimates furnished by the Treasury Department the matter of adjusting the compensation in the different cases was left with the Secretary, with the limitation that it should not exceed the amount stated in the act.
The comptroller has held that the act of 1909 was designed to supersede prior legislation on the subject. 22 Comp. Dec., 445. We think that is the correct view. It expressly repeals all laws and parts of laws inconsistent with its provisions. It vested in the Secretary the authority to readjust or change the compensation of the officers named, “as he may think advisable,” not to exceed a maximum stated. It does not require that all inspectors at a given port be paid the same compensation. On the contrary, as appears from section 2 of the act, it prescribes the maximum rate that can be allowed in any “case,” and recognizes a right to pay the maximum in some cases while withholding it in others. For instance, where the maximum is paid no allowance for other expenses can be made. The act refers the matter of compensation of employees in the customs service largely to the judgment of the administrative officers. The number of inspectors to be employed had been for a long time left to the Secretary’s discretion. When, therefore, acting under the authority of the act of 1909, the collector of the port, with the approval of the Secretary, took *470 steps to properly classify the inspectors at that port, and his plan of reorganization and classification was approved by the Secretary, we think the administrative action should not be interfered with unless plainly violative of official discretion. Ross case, 239 U. S., 530, 538. The regulation of the compensation to be paid within the maximum stated in the act was vested in the Secretary; the plan he adopted, so far as the inspectors at the port of New York were concerned, was reasonable, and appropriations based upon estimates conforming to said plan, and later to that adopted by the President under said act of 1912, have been repeatedly made.
We think that the plaintiff has no right of action, and his petition should be dismissed. And it is so ordered.
Judge Hay was not sitting when this case was heard.